622 So.2d 80 (1993)
Leroy TURNER, Appellant,
v.
RINKER MATERIALS and Liberty Mutual Insurance Company, Appellees.
No. 91-3708.
District Court of Appeal of Florida, First District.
July 22, 1993.
*81 Edward H. Hurt, Jr., Orlando, Bill McCabe, Longwood, for appellant.
Elizabeth C. Wheeler of Johnson and Bussey, P.A., Orlando, for appellees.
SMITH, Judge.
Claimant appeals an order of the judge of compensation claims (JCC) denying, in part, his claim for temporary partial disability (TPD) and wage loss (WL) benefits on the grounds of res judicata and failure to report pursuant to the newly amended section 440.15(3)(b)2., Florida Statutes (Supp. 1990). We affirm in part and reverse in part. We affirm without further comment the cross-appeal of the employer/carrier (E/C) contending that the JCC should have allowed an offset for pension benefits provided by the employer. Domutz v. Southern Bell Telephone & Telegraph Co., 339 So.2d 636 (Fla. 1976).
Claimant, a truck driver for Rinker or its predecessor for 40 years, injured his back on December 17, 1987 during a physical examination required by state law. He was placed on a no-work status continuing through his retirement in March 1988 until June 1988 when his treating chiropractor, Dr. Poss, returned him to light duty. He filed a claim seeking all benefits due. Dr. Poss was of the opinion that claimant reached maximum medical improvement (MMI) on October 7, 1988 and had suffered a permanent impairment as the result of his accident. The E/C controverted the claimant's WL requests for the periods 6/20/88 through 8/14/88. In fact, according to the claims adjuster, the whole case was controverted.
Prior to the hearing held on February 13, 1989, claimant submitted a pretrial stipulation limiting his claim to temporary total disability (TTD) benefits from the date of accident to 6/20/88. Thereafter, the JCC entered a compensation order finding the claimant did not suffer a compensable injury because the injury occurred during a *82 physical examination required by state law. This court reversed. Turner v. Rinker Material Corp., 554 So.2d 647 (Fla. 1st DCA 1989). Because the JCC had erroneously determined the compensability issue, and accordingly "failed to make the necessary evidentiary findings presented," the court reversed and remanded for further proceedings. Id. at 649. After a subsequent hearing held on September 24, 1990, the JCC entered an order on November 27, 1990, finding that claimant was TTD from December 18, 1987 until June 20, 1988.
Claimant continued to treat with Dr. Poss. He was on light duty work status until a back episode on November 20, 1990 led Dr. Poss to return him to TTD status. Dr. Poss causally related claimant's condition to his 1987 accident. Claimant continued on TTD status until March 28, 1991 when Dr. Poss again released him to light duty work. Claimant engaged in an unsuccessful job search and began keeping a job search list after December 1990.
After the JCC's November 27 order finding the accident compensable and awarding benefits, counsel for claimant sent a packet of WL requests for the period August 15, 1988 to December 2, 1990 to the E/C, which the claims adjuster received on January 25, 1991. The E/C controverted the wage loss requests.
In the meantime, the 1990 Legislature amended section 440.15(3)(b)2. With the new provision inserted the statute provides in pertinent part:
Wage-loss forms and job search reports are to be mailed to the employer, carrier, or servicing agent within 14 days after the time benefits are due. Failure of an employee to timely request benefits and file the appropriate job search forms showing that he looked for a minimum of five jobs in each biweekly period (unless the judge of compensation claims determines fewer job searches are justified due to the availability of suitable employment) after the employee has knowledge that a job search is required, whether he has been advised by the employer, carrier, servicing agent, or his attorney, shall result in benefits not being payable during the time that the employee fails to timely file his request for wage loss and the job search reports.
This provision became effective July 1, 1990.
On February 5, 1991, claimant filed another claim for benefits. In the pretrial stipulation, claimant indicated he was seeking TPD benefits from 8/15/88 to 9/30/88, WL from 10/1/88 through 11/19/90, TTD from 11/20/90 through 3/28/91, and WL from 3/29/91 to the present and continuing. At the subsequent hearing, claimant, who presently receives social security and pension benefits, testified he has looked for work as a truck driver but cannot find a job. Claimant testified that he never got a letter from the E/C advising him of his rights or telling him to conduct a job search and that the E/C never sent him any requests for WL forms. The record is devoid of evidence that claimant was appropriately advised of his rights and responsibilities under the workers' compensation law, particularly his responsibility subsequent to July 1, 1990, to file WL forms within 14 days after benefits are due in order to receive compensation.
Thereafter, the JCC entered the order appealed, ruling claimant's claim for TPD benefits from 8/15/88 to 9/30/88 and for WL benefits from 10/1/88 to 9/24/90 were barred on the grounds that they were ripe for determination and were not presented at prior hearings. The JCC found that claimant was not entitled to wage loss benefits after July 1, 1990 based on the provisions of section 440.15(3)(b)2., Florida Statutes (Supp. 1990). The JCC awarded claimant TTD benefits from 11/20/90 through 3/28/91.
In rejecting the claim for WL benefits after July 1, 1990, the JCC considered the fact that no wage loss letter was directed to the claimant by the E/C. However, she found that section 440.15(3)(b)2. contemplates that injured employees may be advised of the necessity of requesting benefits and filing appropriate job search forms by their own attorneys. She took judicial notice of the fact that claimant has been *83 represented by an attorney since early 1988, and assumed that counsel was aware of the statutory amendment and communicated the requirement of timely completion of wage loss forms and job search reports to the claimant.
We agree with the JCC that the claims for TPD benefits from 8/15/88 to 9/30/88, and WL benefits for the periods 10/1/88 to the date of the first hearing, February 13, 1989,[1] are barred because the claims were mature at the time of the first hearing and could have and should have been determined at that hearing. The general rule, with a few exceptions not pertinent here, is that a claim that is mature at the time of an earlier proceeding will be subsequently barred by its omission from that proceeding. State Department of Transportation and Division of Risk Management v. Greene, 599 So.2d 1368, 1370 (Fla. 1st DCA 1992); Florida Power & Light Co. v. Haycraft, 421 So.2d 674 (Fla. 1st DCA 1982); and Hunt v. International Minerals and Chemicals Corp., 410 So.2d 640 (Fla. 1st DCA 1982). We reject claimant's contention that these benefits were not ripe for adjudication on February 13, 1989 because the E/C were not on notice of his entitlement thereto and therefore the time periods for payment of benefits did not begin to run. The E/C had notice of the claimed WL, as the claims adjuster for the carrier admitted receiving wage loss requests from 6/20/88 through 8/14/88. Further, both parties were on notice of Dr. Poss's October 13, 1988 deposition in which he opined that claimant was able to return to light duty as of June 1988 and reached MMI on October 7, 1988.
However, we reverse the remainder of the JCC's order denying WL after the hearing on February 13, 1989. Wage loss up through July 1, 1990, the effective date of section 440.15(3)(b)2., is not precluded by the claimant's failure to pursue this wage loss at the remand hearing on September 24, 1990. In Turner v. Rinker Material Corp., 554 So.2d at 649, this court remanded so that evidentiary findings on issues presented in the February 13, 1989 hearing  but not determined due to the JCC's noncompensability ruling  could be made. Upon remand, a workers' compensation case goes back to the same condition as if the order reviewed had not been entered. Dade County School Board v. Jackson, 473 So.2d 1356, 1357 (Fla. 1st DCA 1985). Unless the appellate court expressly restricts the JCC on remand, the JCC may exercise sound quasi-judicial discretion to allow additional testimony, or to reconsider the evidence previously received in light of the appellate decision. Id. In other words, the JCC may exercise sound quasi-judicial discretion to either confine the inquiry on remand to matters and issues taken up in the first hearing, or to allow new evidence as to matters occurring subsequent to the first hearing. In this case, the remand hearing held on September 24, 1990 was limited in scope to claimant's claim for TTD benefits from the date of accident until June 20, 1988, authorization and payment of Dr. Poss's bills, costs, interest, penalties and attorney's fees. No additional evidence was presented at the hearing. Rather, the evidence consisted of the record of the hearing on February 13, 1989 and this court's appellate decision dated December 29, 1989.
The E/C's reliance on Holland v. Courtesy Corp., 569 So.2d 780 (Fla. 1st DCA 1990) for a contrary result is misplaced. That case involved an award of PTD that was reversed and remanded for further proceedings. On remand, the JCC limited the admissible evidence to that probative of appellant's condition as of the date of the first hearing on October 1, 1987. The remand order declined to award PTD benefits. On appeal, this court did not rule that the JCC had committed error in restricting the remand hearing to the claimant's entitlement to PTD benefits as of the date of the first hearing, October 1, 1987. Ultimately, the court affirmed the denial of PTD benefits, but reversed the JCC's failure to determine claimant's entitlement to other benefits which were ripe for adjudication. It follows logically from the court's *84 affirmance of the JCC's determination to limit the scope of the remand hearing to appellant's condition as of the date of the first hearing on October 1, 1987, that the court was directing the JCC to adjudicate benefits that were ripe at the time of the October 1, 1987 hearing. The Holland case cannot be construed as requiring a remand hearing to address a new claim for benefits arising after the initial hearing.
We conclude that while it might be true that the parties could agree to take up additional matters at a remand hearing, subject to approval by the JCC, fairness prevents the E/C from arguing here that because the claimant failed to take up the issue of new benefits due the benefits were barred. State Department of Transportation and Division of Risk Management v. Greene, 599 So.2d at 1370 (general rule that workers' compensation claim which is mature at the time of earlier proceeding will be barred by its omission therefrom may not be applied if its application would result in an injustice).
Turning to the newly amended section 440.15(3)(b)2., this court ruled in Litvin v. St. Lucie County Sheriff's Department, 599 So.2d 1353 (Fla. 1st DCA), rev. denied, 613 So.2d 6 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 2350, 124 L.Ed.2d 258 (1993) that the amendment at issue here is procedural, and thus could be applied without regard to the date of accident and injury. Nevertheless, to the extent that the JCC relied upon this statute to deny benefits subsequent to July 1, 1990, we conclude that she erred.
Section 440.15(3)(b)2. is an obvious legislative response to case law of this court ruling that a claimant's job search requirement would be excused even though a claimant may have known of the job search requirement through advice by his counsel, if in fact the E/C had not properly advised the claimant of this responsibility. See e.g. Morris v. Metal Industries, 491 So.2d 312 (Fla. 1st DCA 1986) (claimant excused from job search, even though advised by own counsel to perform a search). We are of the view, nonetheless, that this amendment does not transform the workers' compensation law into a claimant-attorney monitored system. The Workers' Compensation Act remains a presumptively self-executing, but fundamentally employer/carrier monitored, system. Saavedra v. Cedars Medical Center, 584 So.2d 197 (Fla. 1st DCA 1991); and Barnes v. PCH Walter T. Parker, 464 So.2d 1298 (Fla. 1st DCA 1985).
Section 440.185(10), Florida Statutes (1991) provides that the Division of Workers' Compensation, Department of Labor and Employment Security shall require by rule that the employer inform a worker who suffers a permanent impairment of his possible entitlement to wage-loss and other benefits and of the worker's obligation to report a claimed loss. In accordance with this directive, the Department of Labor and Employment Security promulgated Rule 38F-3.018, Florida Administrative Code, which requires the carrier to furnish a statement of obligations to the claimant, as well as at least four copies of the WL forms. The rule requires the carrier to send a statement advising a claimant of the following:
Your treating physician has reported that you have reached maximum medical improvement and you may return to work but that you have a permanent impairment which has resulted in a work related physical restriction which may affect your ability to perform the duties of your usual occupation or other appropriate employment. If this physical restriction causes you to lose wages, you may be entitled to additional benefit payments under the Florida Workers' Compensation Law.
If you lose wages, you must complete and send a REQUEST FOR WAGE LOSS/TEMPORARY PARTIAL BENEFITS form (DWC-3) to us within 14 days after the end of any two week period for which a loss of wages is claimed. If you fail to send the completed form within that 14 day period, you may be ineligible for wage loss benefits during that period.
In addition, to be eligible for wage loss benefits, you must demonstrate that you have made a valid effort to obtain suitable *85 gainful employment and that your loss of wages is due to your work-related physical restriction and NOT due to economic conditions, the unavailability of jobs, your unemployment due to misconduct or your failure to accept employment within your capabilities.
To show that you have made a genuine effort to obtain employment, list the dates, names, addresses, type of work, person contacted and the telephone number of the places of employment that you have contacted on the reverse side of the REQUEST FOR WAGE LOSS/TEMPORARY PARTIAL BENEFITS form.
You should also list the dates you make contact with the Florida Job Service Office and any other public or private employment agency.
Please note that the Florida Workers' Compensation Law allows us to evaluate your efforts to obtain gainful employment beginning with the 13th week after you have reached maximum medical improvement. If it can be shown that there are actual job openings within your geographical area and which are within your physical and vocational capabilities, the amount of earning you could have earned at those jobs can be deducted from your benefit payment.
Enclosed are REQUEST FOR WAGE LOSS/TEMPORARY PARTIAL BENEFITS forms for your use. Keep them with your other valuable documents until you either use them or your entitlement to these benefits expires. We are also reporting your permanent impairment to the Division of Workers' Compensation in Tallahassee.
If you desire further information regarding wage loss benefits, you may call the Division of Workers' Compensation at any of their local offices, or at 1-800-342-1741.
Significantly, the letter advises an employee that failure to send the completed wage loss requests within 14 days may result in ineligibility for wage loss benefits during that period. Without addressing the question of whether the statement adequately advises an employee of the mandatory consequences of section 440.15(3)(b)2., and assuming for purposes of this opinion that it is sufficient warning to an employee of the consequences of failure to report, we comment parenthetically that the act previously contained (as it still does) a reporting requirement that wage loss be reported by the employee to the carrier or self insured employer within 30 days after the termination of the month for which such loss is claimed. See § 440.185(10), Fla. Stat. (1991). Interpreting section 440.185(10), this court has held that in the absence of any contention that the E/C was prejudiced by a worker's untimely filing of WL forms, an untimely filing did not require denial of benefits. Stahl v. Mike Gordon's Seafood Restaurant, 408 So.2d 808 (Fla. 1st DCA 1982). However, as we construe the new law, section 440.15(3)(b)2. is mandatory, leaving no room for such considerations as whether a party was prejudiced by the untimely filing. In other words, the new law contains a strict requirement  timely report or waive. Given this drastic consequence of failure to report, the E/C's duty to notify a claimant of his responsibilities under the Act becomes even more critical.
In this case, claimant testified that he never got a letter from the E/C advising him of his rights or telling him to conduct a job search, and that the E/C never sent him any requests for WL forms. There is a total absence of evidence in this record that claimant was told by anyone  and in particular his counsel  that he was required to report claimed wage loss within 14 days after the end of any two week period for which the loss was being claimed otherwise his claim would not be payable.[2] Given the onerous consequences of failure to report, we reject the JCC's "assumption" that claimant's counsel communicated the requirement for timely completion of wage loss forms and job search reports to the claimant. Without evidence that the claimant *86 knew of the job search requirement and wage loss reporting requirement there is no basis for the JCC's conclusion that claimant is not entitled to wage loss benefits due to his failure to report as required by section 440.15(3)(b)2.
We are not unmindful of the E/C's initial position in this case that the claim was not compensable, therefore wage loss (or any benefits) were not due. The E/C may wonder at the requirement of sending a job search/wage loss letter when the E/C are controverting a claimant's entitlement to benefits. If this indeed be a quirk in the law, it is necessary for the legislature to relieve the E/C of their obligation in such circumstance. That aside, we find the E/C's position in this case "curious" at best. On the one hand, the E/C have failed to carry out their responsibility by ensuring the claimant has knowledge of his responsibilities under the Workers' Compensation law. On the other hand, without concrete evidence that claimant understood his reporting requirement, the E/C argue that claimant is not entitled to wage loss benefits because he did not comply with the law by reporting within 14 days. For the reasons set forth herein, we reject such argument.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
KAHN and WEBSTER, JJ., concur.
NOTES
[1] The last applicable request for WL covers the period 1/30/89 to 2/12/89.
[2] We have not overlooked the fact the claimant reportedly sent wage loss requests to the E/C for the period 6/20/88 through 8/14/88. This act  done nearly two years before passage of the amendments to section 440.15(3)(b)2.  obviously does not prove claimant's knowledge of the consequences of failure to report under the amended law.