393 So.2d 1063 (1980)
AMERICAN BANKERS INSURANCE CO., Continental Insurance Company, Petitioners,
v.
Vella LITTLE, rESPONDENT.
Joseph J. NEUMAN, Petitioner,
v.
Joe Patti SEAFOOD, Incorporated, and Auto-Owners Insurance Company and Industrial Relations Commission, Respondents.
Nos. 56816, 57851.
Supreme Court of Florida.
October 30, 1980.
Rehearing Denied March 9, 1981.
Russell A. Ortmayer of Marlow, Shofi, Ortmayer, Smith, Connell & Valerius, Miami, for American Bankers Ins. Co.
William R. Davenport, Gulf Breeze, for Joseph J. Neuman.
Joseph J. Finkelstein of Pelzner, Schwedock & Finkelstein, P.A., Miami, for Vella Little.
*1064 William H. Clark of Clark, Partington, Hart & Hart, Pensacola, for Joe Patti Seafood, Inc., Auto-Owners Ins. Co. and Industrial Relations Commission.
ENGLAND, Justice.
These cases arise from a 1973 amendment to Florida's workmen's compensation law, section 440.15(10) of the Florida Statutes, permitting Florida employers and carriers to offset their disability payments by the amount of an injured employee's weekly federal social security benefits. This legislation was prompted by a 1965 amendment to the federal Social Security Act which allows the states to claim an offset for federal disability payments, but in the absence of such action, continues the prior practice of permitting the Social Security Administration to claim an offset for state-generated benefits.[1] Significantly, both the Florida and the federal statutes contain a "hold harmless" provision designed to ensure that injured employees do not receive less under the combined acts than they would under either.[2] The question for decision is whether Florida employers and insurance carriers are entitled to the social security offset authorized by section 440.15(10) for current payments arising out of an accident which occurred prior to that statute's effective date.

American Bankers Insurance Co. v. Little
Vella Little was permanently and totally disabled in 1966. At the time her average weekly wage[3] was $58.84, of which amount she was entitled to receive no more than eighty percent in combined federal social security and state workmen's compensation benefits, or $47.07 per week. After the enactment of section 440.15(10), American Bankers, the employer's carrier, learned that Little was receiving social security payments of $47.03 per week, and claimed an offset of that amount against their liability. This reduced her compensation payments to $.04 per week. Little does not dispute these computations but asserts that her aggregate benefits were in fact reduced by the offset, because the Social Security Administration had failed to claim the offset to which it was entitled for American Bankers' disability payments during the period of time prior to the enactment of section 440.15(10).

Neuman v. Joe Patti Seafood, Inc.
Joseph Neuman was left permanently and totally disabled from an industrial accident in 1972. At the time of his accident Neuman's average weekly wage was $114.62, of which amount he was entitled to receive no more than eighty percent in combined social security and state workmen's compensation benefits, or $91.70 per week. After the enactment of section 440.15(10), the carrier learned that the total social security and workmen's compensation payments to Neuman exceeded $91.70 per week and sought to offset its payments to the extent of that excess. In so doing, the carrier reduced its payments from $56 to $42.09-a reduction of $13.91 per week. Neuman points to record evidence that the Social Security Administration had taken an offset for state-generated benefits in computing their payments, and he argues that another offset by the carrier as authorized by section 440.15(10) will effectively cause a reduction in benefits since both sources of disability benefits will be claiming offsets to his detriment.
*1065 There is really no dispute concerning the purpose of the interplay between federal and state law with regard to offsetting benefits. The parties agree that the change in federal law was designed to give states the benefit of offsets which formerly were taken by the Social Security Administration for persons disabled in job-related injuries.[4] They also agree that each statute contains a hold harmless provision fashioned to prevent a double offset resulting in decreased benefits[5] and that the State of Florida properly took advantage of the change in federal law by enacting its offset provision, effective on July 1, 1973.
Little and Neuman both claim that retroactive application of the section 440.15(10) offset impairs their substantive rights as of the time of the injury. They cite to Sullivan v. Mayo, 121 So.2d 424 (Fla. 1960), in which we held that a party's substantive rights under the workmen's compensation law vest on the date of the accident. Mere procedures for the enforcement of substantive rights, however, may be changed retroactively since "no one has a vested right in any given mode of procedure." Walker v. Laberge, Inc. v. Halligan, 344 So.2d 239, 243 (Fla. 1977). It is clear to us that neither Little's nor Neuman's substantive rights have been impaired by the implementation of the section 440.15(10) offset. The claimants only vested right in this case is to receive a certain total dollar amount in combined state and federal disability payments and neither has demonstrated that he or she has suffered any diminution of those benefits by reason of the subsequent enactment and implementation of the offset authorized by section 440.15(10). Both before and after the enactment of Florida's offset provision, claimants who have been injured receive the same maximum percent of weekly earnings. The hold harmless provisions in both the federal and state statutes effectively guarantee payment of the maximum disability benefits available under either social security or workmen's compensation. Accordingly, the mere shift in the source of payments from predominantly state-generated payments to predominantly federally-generated payments is procedural and in no way affects any vested right that an injured employee has as a result of his or her disability.
The only legitimate dispute between the parties in these two suits is whether the facts reveal an unwarranted reduction of benefits to either injured employee. Vella Little claims a reduction of benefits in fact because the Social Security Administration has never taken the offset to which it was entitled between 1966 and the commencement of American Banker's offset. Joseph Neuman claims a putative reduction in benefits, arguing that the Social Security Administration's continuation of its offset creates a presumption that the federal weekly computation base or "average current earnings" is greater than his state-determined "average weekly wage" and that this disparity results in lower disability payments.[6] Neither parties' contentions warrant the requested relief.
Vella Little has simply had a windfall since 1966 because the Social Security Administration never claimed the offset to which it was entitled.[7] That fact hardly *1066 justifies our concluding, as a matter of law, that the enactment of the Florida statute affects her vested rights.
Joseph Neuman similarly fails to demonstrate any reduction in benefits in fact, for two reasons. First, there is no record support for his contention that federally-determined average current earnings are higher than state-determined average weekly wage. Second, the assertion that the federal government continues to take an unwarranted offset of social security payments is a matter within his own competence to control  that is, he simply need write the Social Security Administration that the Florida carrier has taken advantage of the combined federal-Florida statutes to eliminate the federal offset.
We recognize that few citizens are capable of protecting their rights fully when correspondence and negotiation with the federal government are involved. It may be unrealistic to believe that any individual  much less Neuman, who is functionally illiterate  could notify the proper authority in the Social Security Administration in time to avoid a double offset. It would therefore be beneficial to injured workers if a carrier were obliged to notify the Social Security Administration of its intent to offset, and thus insure that any federal offset has ceased before its own is implemented. Carriers, most of whom handle large numbers of worker's compensation claims and who in all events control the commencement of their offsets, can more readily ascertain the proper office to notify, and could communicate by form letter. That avenue, of course, is not available to individual claimants. Resolution of this problem, however, is a matter for the legislature and not this court.
Accordingly, we quash the order of the Industrial Relations Commission in American Bankers, and we remand to a deputy commissioner for proceedings consistent with this opinion. We deny certiorari in Neuman.[8]
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] 42 U.S.C. § 424a (1976). The United States Supreme Court upheld this offset provision in Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).
[2] § 440.15(10)(a), Fla. Stat. (1975) & 42 U.S.C. § 424a(d) (1976).
[3] There is a difference in computation between the federal formula, which considers the "average current wage," and the state calculation, which utilizes the "average weekly wage." A 1975 amendment to the Florida statute allows the employee the higher figure. § 440.15(10)(a), Fla. Stat. (1975). This "hold harmless" provision makes it unnecessary to decide what effect, if any, this discrepancy might have on claimants' rights to compensation See Patrick Fruit Co. v. Boykins, IRC Order 2-3904 (Sept. 11, 1979) (discussion of the proper calculation). See also Winn Dixie Stores, Inc. v. Crawford, 376 So.2d 482 (Fla. 1st DCA 1979); Husky Indus. v. Mixon, IRC Order 2-3905 (Sept. 11, 1979).
[4] "Both Social Security and Workmen's Compensation are social welfare legislation ... Most of the argument for the Workmen's Compensation offset came from employers who generally pay all of the cost for Workmen's Compensation and half of the cost of Social Security benefits. Their argument before Congress was that they were paying twice for the same injury." Lofty v. Richardson, 440 F.2d 1144, 1151-52 (6th Cir.), cert. denied, 404 U.S. 985, 92 S.Ct. 443, 30 L.Ed.2d 369 (1971). See also the legislative history of the offset provision contained in Senate Rep. No. 404, 89th Cong., 1st Sess. (1965) U.S. Code Cong. & Admin. News 1965, p. 1943.
[5] See statutes cited in note 2 supra.
[6] See note 3 supra.
[7] At oral argument, Little advanced a unique "estoppel" theory, contending that the Social Security Administration's failure to take the offset now barred the carrier from taking its offset. We find no authority for the proposition that a federal agency can estop the operation of a state statute; indeed, one recent United States Supreme Court decision indicates that federal actions cannot impair traditional, legitimate, and important functions of state government. National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). Moreover, the federal government apparently can now take the offset even if we were to deny it to the carrier. The government may recoup past overpayments unless Little can prove that she was without fault in receiving them and that their recovery would contravene the humanitarian purposes of the Social Security Act. 42 U.S.C. § 404(a)(1), (b) (1976).
[8] Because we allow the application of the offset, we need not decide the question presented by petitioner Neuman with respect to attorney's fees.