591 So.2d 288 (1991)
UNIVERSITY MEDICAL CENTER and Johns Eastern Company, Inc., Appellants,
v.
Tyrone SUMPTER, Appellee.
No. 91-409.
District Court of Appeal of Florida, First District.
December 9, 1991.
*289 Jack W. Bettman, Jacksonville, for appellants.
Martin J. Mickler, of Martin J. Mickler, P.A., Jacksonville, for appellee.
SHIVERS, Judge.
The employer/carrier (E/C) in this workers' compensation case appeal an order entered by the judge of compensation claims (JCC) finding the E/C to have improperly taken a social security offset against wage-loss benefits paid to the claimant since January 1990. We affirm the order.
The record on appeal indicates that the appellee/claimant sustained a compensable back injury on July 3, 1986, and began receiving various types of workers' compensation benefits, including wage-loss, soon thereafter. Claimant also began receiving social security disability benefits at some point after the accident but, through at least the end of 1989, the E/C made no attempt to take a social security offset against wage-loss benefits paid, pursuant to this court's holding in Good Housekeeping Gas Co. v. Kitler, 492 So.2d 700 (Fla. 1st DCA 1986). In that case, it was held that, since wage-loss benefits were paid monthly, section 440.15(9)(a), Florida Statutes (1985),[1] which applied only to weekly workers' compensation benefits, did not authorize the taking of a social security offset against wage-loss paid to a claimant. Effective October 1, 1989, the Legislature amended section 440.15(3)(b)1, Florida Statutes, to provide that wage-loss benefits would be based on an employee's average weekly, rather than monthly, wages. As a result, the E/C began in January 1990 to take a social security offset against the wage-loss benefits that were being paid to the claimant.
Claimant subsequently filed a claim for the unpaid balance of his wage-loss benefits, arguing that the social security offset was improper. After a hearing on that issue, the JCC entered an order finding (1) that the October 1, 1989 amendment to section 440.15(3)(b)1 "created a new offset with the result that there was a reduction in the aggregate of claimant's total workers' compensation and social security benefits due and payable"; (2) that, as a result, the rule set out in American Bankers Insurance Co. v. Little, 393 So.2d 1063 (Fla. 1980) was not applicable; and (3) that claimant was entitled to the balance of wage-loss benefits underpaid as a result of the improperly taken offset. We agree with each of these findings.
In American Bankers, supra, the Florida Supreme Court considered the retroactivity of a 1973 amendment to section 440.15(10), *290 Florida Statutes, which created the right of an employer to offset workers' compensation disability payments by the amount of an injured employee's weekly federal social security disability payment. At the time of the amendment's enactment, the Federal Social Security Act contained a provision allowing the Social Security Administration to claim an offset from state-generated benefits. Both the federal and state acts contained "hold harmless" provisions guaranteeing payment of the maximum disability benefits available under either social security or workers' compensation, thus insuring that the employee would not receive a decrease in benefits due to double offsetting by both the E/C and the Social Security Administration.
The question raised in American Bankers, then, was whether the retroactive application of the amendment to section 440.15(10) would impair the claimants' substantive rights existing at the time of their injuries. The court found that their rights would not be so impaired, holding:
The claimants [sic] only vested right in this case is to receive a certain total dollar amount in combined state and federal disability payments and neither has demonstrated that he or she has suffered any diminution of those benefits by reason of the subsequent enactment and implementation of the offset authorized by section 440.15(10). Both before and after the enactment of Florida's offset provision, claimants who have been injured receive the same maximum percent of weekly earnings. The hold harmless provisions in both the federal and state statutes effectively guarantee payment of the maximum disability benefits available under either social security or workmen's compensation. Accordingly, the mere shift in the source of payments from predominantly state-generated payments to predominantly federally-generated payments is procedural and in no way affects any vested right that an injured employee has as a result of his or her disability.

393 So.2d at 1065. (emphasis supplied)
In Ralston Purina Company v. Byers, 457 So.2d 1138 (Fla. 1st DCA 1984), this court considered the retroactivity of a 1983 amendment to section 440.15(3)(b)4, Florida Statutes, which, for the first time, allowed persons 65 years of age and over and eligible for social security retirement benefits to also obtain wage-loss benefits, but which provided for a social security setoff. Prior to the amendment, the statute had provided that an injured employee's right to wage-loss benefits terminated when the employee reached age 65 and became eligible for social security retirement benefits. This court held that the amendment clearly altered the E/C's liability and could not be characterized as "relatively minor" and, therefore, found the statutory change to be substantive in nature and not retroactively applicable.
In the instant case, the amendment to section 440.15(3)(b)1, changing wage-loss benefits from monthly to weekly, has the effect of creating, for the first time, the E/C's right to a social security set-off against wage-loss benefits paid to an injured employee. Therefore, where an injured employee prior to the amendment could, under Florida law, receive both monthly wage-loss payments and social security disability benefits without having his or her wage-loss benefits reduced, an injured employee who receives both types of benefits after the amendment will have his or her wage-loss payments (as well as all other weekly workers' compensation benefits) reduced to an amount whereby the sum of the wage-loss and social security disability benefits does not exceed 80% of the employee's average weekly wage. As such, we agree with the JCC's finding that the amendment reduces the aggregate of an injured employee's workers' compensation wage-loss and social security benefits, and that it alters the E/C's liability as did the amendment in Ralston Purina, rather than simply shifting the offset from the Social Security Administration to the E/C with a guarantee that the employee's benefits would remain the same, as occurred in American Bankers. The JCC's finding, that claimant was entitled to the balance of wage-loss benefits underpaid as a result of *291 the improperly-taken offset, is therefore affirmed.
The argument raised in appellee/claimant's answer brief as "Issue II"  that the JCC erred in denying his claim for penalties on the unpaid wage-loss benefits  will not be addressed on appeal since appellee has not filed a cross appeal in this case. Nealy v. City of West Palm Beach, 442 So.2d 273 (Fla. 1st DCA 1983).
AFFIRMED.
ZEHMER and WEBSTER, JJ., concur.
NOTES
[1] Section 440.15(9)(a), Florida Statutes (1985), provides as follows:

Weekly compensation benefits payable under this chapter for disability resulting from injuries to an employee who becomes eligible for benefits under 42 U.S.C. s. 423 shall be reduced to an amount whereby the sum of such compensation benefits payable under this chapter and such total benefits otherwise payable for such period to the employee and his dependents, had such employee not been entitled to benefits under this chapter, under 42 U.S.C. ss. 423 and 402, does not exceed 80 percent of the employee's average weekly wage. However, this provision shall not operate to reduce an injured worker's benefits under this chapter to a greater extent than they would have otherwise been reduced under 42 U.S.C. s. 424(a). This reduction of compensation benefits is not applicable to any compensation benefits payable for any week subsequent to the week in which the injured worker reaches the age of 62 years.