668 So.2d 645 (1996)
ACE DISPOSAL and Florida Air Condition Contractors, Appellants,
v.
Clarence HOLLEY, Appellee.
No. 94-3384.
District Court of Appeal of Florida, First District.
February 20, 1996.
Thomas H. McDonald of Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Orlando, for appellants.
Irvin A. Meyers of Meyers, Mooney & Meyers, Orlando, for appellee.
KAHN, Judge.
On April 18, 1992, the claimant, Clarence Holley, sustained a compensable workers' compensation injury. Before January 1, 1994, the employer/carrier (E/C) accepted Holley as permanently and totally disabled. On January 6, 1994, Alan Duggan, a representative of the carrier, notified Holley, through his attorney, that his permanent total disability (PTD) benefits would be suspended pursuant to section 440.15(1)(f)2.b., Florida Statutes (Supp.1994), unless Holley applied for social security disability benefits. Holley's attorney responded to this notification in a letter dated January 10, 1994, consisting of the following statements:
I have your letter of January 6, 1994. I dare you to suspend Mr. Holley's compensation benefits upon your perceived notion that 440.15(1)(f)2.b. is procedural.
Also, Al, do not do anything with reference with GES that would interfere with the attorney/client relationship that I have with Mr. Holley. That could lead to a law suit and I have reached a stage in my professional career where I am just itching *646 to sue an insurance company for that kind of behavior.
On January 30, 1994, because of Holley's failure to apply for social security disability, the E/C suspended payment of PTD benefits. Holley then filed a petition seeking payment of those benefits. In her order, the judge of compensation claims (JCC) found section 440.15(1)(f)2.b. substantive and thus not applicable to accidents that occurred prior to January 1, 1994, the effective date of the amendment. The JCC therefore awarded Holley payment of PTD and supplemental benefits from January 30, 1994. The JCC also awarded penalties, costs, and attorney's fees. The E/C have appealed this order. Because the JCC erred in finding the amendment substantive, we reverse.
"[S]ubstantive law prescribes duties and rights and procedural law concerns the means and methods to apply and enforce those duties and rights." Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1358 (Fla.1994). This court has explained the significance of the characterization of amendments to the Workers' Compensation Law as substantive or procedural:
It has long been established that the parties' substantive rights under the Workers' Compensation Law are fixed at the time of the claimant's accident and injury. However, it is also well established that procedural or remedial enactments may apply without regard to the date of accident and injury, as the parties generally do not have a vested entitlement with regard to such matters. As an analysis of the various decisions in this area would suggest, it is sometimes difficult to clearly demarcate the distinction between a substantive right and a procedural or remedial enactment.
Paulk v. School Bd. of Palm Beach County, 615 So.2d 260, 261 (Fla. 1st DCA 1993). If an amendment changes the amount of benefits a claimant may receive or impacts a claimant's entitlement to services, then it should be considered substantive. See Southern Bakeries v. Cooper, 659 So.2d 339, 341 (Fla. 1st DCA 1995) ("The cases addressing whether a change in the law should be viewed as substantive or procedural have routinely treated the entitlement to a service, and the source of payment therefor, as a matter of substance."[1]); Meek v. Layne-Western Co., 624 So.2d 345, 347-48 (Fla. 1st DCA 1993) (1990 amendments changing the amount of benefits claimant may receive are substantive and should not be applied retroactively.). Similarly, if an amendment "substantially changes" the liability of the E/C from what it was when the injury occurred, it may not be applied retroactively. See Clay Hyder Trucking Lines v. Atherton, 450 So.2d 318, 321 (Fla. 1st DCA 1984) (Because amendment concerning who has responsibility to assume the cost of rehabilitation increases potential liability of E/C, it is substantive in nature and applies prospectively only.); Ship Shape v. Taylor, 397 So.2d 1199, 1201 (Fla. 1st DCA 1981) (Statute providing for assessment of attorney's fees against E/C substantially changed E/C's liability from what it was when injury occurred and thus did not apply retroactively.). In contrast, if a statutory change does not alter vested substantive rights, then it applies retroactively. See Paulk, 615 So.2d at 261 (Where amendment did not impact claimant's entitlement to witnesses' testimony or alter source of payment for witnesses' fees, it did not diminish claimant's substantive rights and applied retroactively.); Mr. C's TV Rental v. Murray, 559 So.2d 452, 453 (Fla. 1st DCA 1990) (Amendment limiting family members to 12 hours of attendant care per day applied retroactively because it did not affect or limit a claimant's right to receive 24 hours of attendant care per day.).
In this case, the amended statute provides:
The division shall provide by rule for the periodic reporting to the employer or carrier of all earnings of any nature and social security income by the injured employee entitled to or claiming benefits for permanent total disability. The employer or carrier is not required to make any payment of benefits for permanent total disability for any period during which the employee *647 willfully fails or refuses to report upon request by the employer or carrier in the manner prescribed by such rules or if any employee who is receiving permanent total disability benefits refuses to apply for or cooperate with the employer or carrier in applying for social security benefits.

§ 440.15(1)(f)2.b., Fla.Stat. (Supp.1994) (underlined portion indicates language added by amendment at issue, Ch. 93-415, § 20, 1994 Fla.Laws 62, 120).
In 1980, the Florida Supreme Court determined that the statute authorizing the E/C to take the social security offset, section 440.15(10), Florida Statutes, is procedural. American Bankers Ins. Co. v. Little, 393 So.2d 1063 (Fla.1980). In Little, the claimants asserted that the offset impaired their substantive rights. Id. at 1065. The supreme court concluded, however, that the claimants' substantive rights were not affected and therefore the amendment authorizing the offset should apply retroactively:
It is clear to us that neither [claimants'] substantive rights have been impaired by the implementation of the section 440.15(10) offset. The claimants only vested right in this case is to receive a certain total dollar amount in combined state and federal disability payments and neither has demonstrated that he or she has suffered any diminution of those benefits by reason of the subsequent enactment and implementation of the offset authorized by section 440.15(10). Both before and after the enactment of Florida's offset provision, claimants who have been injured receive the same maximum percent of weekly earnings. The hold harmless provisions in both the federal and state statutes effectively guarantee payment of the maximum disability benefits available under either social security or workmen's compensation. Accordingly, the mere shift in the source of payments from predominantly state-generated payments to predominantly federally-generated payments is procedural and in no way affects any vested right that an injured employee has as a result of his or her disability.
Id. at 1065.
Regarding the amendment at issue in this case, if a claimant applies for social security disability and does not receive it, the claimant's workers' compensation benefits remain the same. If a claimant does receive social security disability, the claimant's total benefits are not reduced; rather, subject to certain limitations, the E/C may then offset those benefits against the claimant's workers' compensation benefits.[2] With either result, the claimant's total amount of benefits received does not decrease. Here, Holley stipulated that he would actually receive more in total benefits from workers' compensation and social security, even with the offset, than he would receive in workers' compensation benefits alone. On this record, then, the amendment does not decrease the total amount of benefits the claimant may receive.
Strictly speaking, the present case does not involve the social security offset. Had the E/C sought to actually take such an offset, "the burden of proving its appropriateness and applicability would appear to be one which employer/carrier must bear." Colonel's Table v. Malena, 412 So.2d 64, 66 (Fla. 1st DCA 1982). The issue posed by the statute now before us is whether the E/C may suspend PTD benefits pending claimant's application for social security disability. We are simply unable to say whether an offset issue may arise in the future.
Nor does the statute before us impose a penalty. Instead, the statute merely has the effect of implementing the procedural provision upheld by the supreme court in Little. Following this rationale, the statute should be viewed as "remedial ... to be applied retrospectively ... to pending cases." Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d at 1358.
Further, we construe the language used in the amended statute as requiring the *648 E/C to notify a claimant before suspending benefits. At the least, the notification must advise the claimant that failure to cooperate will result in the discontinuance of PTD benefits. The amended statute specifically indicates that the E/C may suspend PTD benefits when a claimant "refuses to apply for or cooperate with the employer or carrier in applying for social security benefits." § 440.15(1)(f)2.b., Fla.Stat. The use of the phrase "refuses to apply for or cooperate" connotes that the E/C must first communicate to the PTD claimant the requirement that the claimant apply for social security disability. Moreover, the requirement for employer notification is founded upon practical necessity and the E/C's obligation to inform claimants of their rights and responsibilities under the Workers' Compensation Act. See § 440.185, Fla.Stat.; Turner v. Rinker Materials, 622 So.2d 80, 84 (Fla. 1st DCA 1993) ("The Workers' Compensation Act remains a presumptively self-executing, but fundamentally employer/carrier monitored, system."); Barnes v. PCH Walter T. Parker, 464 So.2d 1298, 1299 (Fla. 1st DCA 1985) ("Workers' Compensation Actin its day-to-day operation is intended to bebeyond all elsequintessentially an employer-carrier monitored system, rather than a claimant-attorney monitored system."). Such a notice requirement serves fairness, reason and common sense. Resort to the bureaucratic morass of rulemaking is not a necessary predicate for enforcement of the aspect of the statute we have construed today.
Because the amendment does not impair vested substantive rights, it should have been applied in this case. The JCC's order is therefore REVERSED.
ALLEN, J., concurs.
ZEHMER, C.J., dissents w/written opinion.
ZEHMER, Chief Judge, dissenting.
The sole issue on appeal is whether the judge of compensation claims erred in ruling that the 1993 amendment to section 440.15(1)(f)2.b., Florida Statutes (Supp.1994), does not apply in this case to authorize the employer and carrier to suspend payment of permanent total disability benefits until the claimant cooperates in applying for social security disability benefits. I disagree with the majority's holding that the 1993 amendment to this section is merely a procedural change that is applicable to all recipients of permanent disability benefits irrespective of whether the accidental injury occurred or the commencement of PTD benefits was authorized before the effective date of this amendment. In my opinion, this amendment is a substantive, not procedural, change in the law because it deprives the employee of a previously vested right to PTD benefits for the purpose of coercing the employee to cooperate with the carrier in applying for social security benefitsclearly a substantive right that did not exist before the adoption of the amendment. I would affirm the order under review for this reason.
Additionally, I would affirm for the reason that this penal provision added to section 440.15(1)(f)2.b. in 1993 is not self-executing and does not authorize the employer and carrier to unilaterally enforce the penalty in the absence of a division rule that prescribes the procedure and manner for implementing it. As no such rule had been adopted when the employer and carrier sent their notice to claimant on January 6, 1994, the new penalty provided by this statute was not enforceable.
The material facts are not in dispute. Claimant was injured in a compensable accident on April 18, 1992. The employer and carrier administratively accepted claimant as permanently and totally disabled as of November 18, 1992, and paid permanent total disability benefits and supplemental benefits from that date until January 30, 1994. On January 6, 1994, the carrier notified claimant by letter that under the recently amended workers' compensation statute he was required to apply for social security disability benefits that the employer and carrier could offset against the PTD benefits currently being paid. Claimant's attorney responded, in less than professional language I would note, that claimant would not make such an application. Although claimant continued to be PTD, the carrier suspended payment of benefits in reliance on the language added in *649 1993 to section 440.15(1)(f)2.b., asserting claimant's willful failure to cooperate with them in applying for social security disability benefits as the basis for this action.
The employer and carrier take the position that this new statute is remedial legislation that is procedural in nature, and thus applies retroactively to the PTD benefits being paid even though claimant's injuries occurred and he had been accepted as PTD well before the effective date of the amendment. Claimant contends that the statute is substantive in nature and only applicable prospectively to injuries arising after its enactment.
The judge of compensation claims ruled that the statutory change affects the substantive rights of the parties and cannot be retroactively applied to covered injuries occurring before the effective date of the statute. Reasoning that section 112, chapter 93-415, Laws of Florida, expressly provided that the 1993 act would take effect on January 1, 1994, except as otherwise provided in the act, and noting that there is no provision in the act for retroactive application of the amendment to section 440.15(1)(f)2.b., the judge declined to apply the penalty provision in this case.
I agree with the judge of compensation claims that this amendment is a substantive change in the law. The majority opinion recognizes that a change in the law is substantive if it changes "the amount of benefits a claimant may receive" or "`substantially changes' the liability of the E/C from what it was when the injury occurred" [citations omitted]. Section 440.15(1)(f)2.b. as amended authorizes an employer and carrier to cease paying PTD benefits during any period of time that an employee "refuses to apply for or cooperate with the employer or carrier in applying for social security benefits." This language creates a new substantive penalty that operates to permanently deprive an employee of a previously vested right to PTD benefits for failing to apply or assist in applying for social security benefits. It is a new substantive penalty, not a provision for recoupment of overpayments or lost offsets, for the following reasons.
First, there is no correlation between the amount of PTD benefits the employer and carrier withholds and the amount of the social security offset the employer and carrier might receive. This is so because the amended statute allows the employer and carrier to withhold the entire amount of PTD benefits due as a coercive measure even though the amount of the social security offset is usually significantly less than the PTD benefits being paid.
Second, there is no provision for reimbursement to the employee of the suspended payments should the claimant eventually cooperate and apply for social security benefits. Once the employer and carrier cease paying PTD benefits pursuant to this statute, the employee will be permanently deprived of those amounts of money just as though the employee had been ordered to pay an administrative or criminal fine for an infraction of the law. A penalty of this nature differs significantly from remedial legislation that would authorize an employer and carrier to temporarily withhold payment of benefits until the employee has applied for social security benefits as a coercive measure, but hold the employer and carrier liable for payment of the withheld benefits in full when the employee complies with the statute (subject, of course, to any social security offset that may be warranted). While this latter type of coercive provision is obviously remedial in nature and capable of retroactive application because it does not permanently deprive an employee of benefits due, the provision added in 1993 under review creates a new substantive right in the employer and carrier that allows them to permanently deprive an employee of benefits otherwise duea significant change in the rights of the employer and employee that did not exist when claimant sustained his injury and the employer and carrier accepted claimant as PTD. Prior to the effective date of this amendment the employer and carrier could reduce payment of PTD benefits only after the employee actually began receiving social security disability benefits. § 440.15(10)(c), Fla.Stat. (1993).
The majority opinion relies primarily on the supreme court's holding in American Bankers Ins. Co. v. Little, 393 So.2d 1063 (Fla.1980), that the social security offset provision *650 adopted in 1973 could be retroactively applied in cases where the injury occurred before its adoption because the total effect of this offset statute did not deprive the employee of any amounts of compensation due under the provisions of the workers' compensation law in effect on the date of the accident. That decision would be analogous and provide appropriate precedent for giving retroactive effect in this case if, but only if, the 1993 amendment had provided that PTD benefits withheld to coerce an employee to apply for social security benefits would have to be paid in full once the employee applied for social security benefits. Only with such a provision would the employee not be deprived of benefits otherwise due. Had the 1993 amendment so provided, I would completely agree with the majority's statement that this amendment is remedial and that "the statute before us merely has the effect of implementing the procedural provision upheld by the supreme court in Little." But the statute before us does much more because it provides a penalty that bears no direct relationship to the amount of the social security offset potentially available to the employer and carrier, and it permanently deprives the employee of withheld funds.
There is, moreover, an additional but equally compelling reason why the termination of claimant's PTD benefits by the employer and carrier was illegal and not authorized by the 1993 amendment to section 440.15(1)(f)2.b. That amendment is not self-executing, but must be implemented by division rules.
An appellate court is required to affirm an order under review if the lower tribunal reached the correct result even though the order states the wrong reasons or theory for its ruling. E.g., Escarra v. Winn Dixie Stores, Inc., 131 So.2d 483, 485 (Fla.1961) ("However, unless it can be said that the deputy's holding was erroneous, and not merely the reasons which he gave therefor, his order should not be reversed. It is the settled practice of this court to affirm a decree of the lower court even though it is based on an erroneous ground if the result is justified on any other ground appearing in the record."); Plantation Const. Co. v. Ayers, 385 So.2d 1138, 1140 (Fla. 1st DCA 1980); ("[W]e have examined the record in light of the ruling in Palm Beach Junior College v. Aho, IRC 2-2985, (1976), cert. den. 339 So.2d 1171 (Fla.1976), that if the order of the Deputy Commissioner is based upon erroneous grounds, but the result is nevertheless justified, the order should be affirmed."); Department of Offender Rehab. v. Godwin, 420 So.2d 364, 365 (Fla. 1st DCA 1982). We may apply this principle even where the ground or theory has not been presented to the lower tribunal or in the appellee's brief. E.g., Palm Beach Junior College v. Aho; Freeman v. State, 589 So.2d 368 (Fla. 1st DCA 1991).
The statutory language under review was added as a portion of a sentence to previously existing provisions in section 440.15(1)(f)2.b:
b. The division shall provide by rule for the periodic reporting to the employer or carrier of all earnings of any nature and social security income by the injured employee entitled to or claiming benefits for permanent total disability. The employer or carrier is shall not be required to make any payment of benefits for permanent total disability for any period during which the employee willfully fails or refuses to report upon request by the employer or carrier in the manner prescribed by such rules or if any employee who is receiving permanent total disability benefits refuses to apply for or cooperate with the employer or carrier in applying for social security benefits.

Ch. 93-415, § 20, at 120, Laws of Fla. Provisions similar to this are included in sections 440.15(1)(f)2.a.,[3] *651 440.15(2)(d),[4] and 440.15(10)(c),[5] Florida Statutes (Supp.1994). Reading all of these sections in pari materia, as we must, it is evident that section 440.15(10) controls the implementation of the social security offset provisions in sections 440.15(1)(f) and 440.15(2) and requires the division to adopt rules, pursuant to section 440.591, that set forth "the procedure and manner for requesting the authorization and for compliance by the employee," with those two sections. The division adopted rule 38F-3.021, Florida Administrative Code, for this very purpose. As amended through November 8, 1994, that rule provides:
38F-3.021 Additional Income Source Reports.
(1) Within 21 days after the employee receives a request from either the Division or the carrier for either LES Form DWC-14, Request for Social Security Disability Benefits Information, or LES Form DWC-30, Authorization Request for Unemployment Compensation Information, the employee shall complete the form and return it to the party requesting the information. The employee shall renew the authorization each 12 months upon a request by the Division, employer or carrier.
Upon request of the Division, employer, or carrier, any employee eligible for temporary total, temporary partial, permanent total disability or permanent total supplemental compensation shall complete, sign, and return LES Form DWC-19, Employee Earnings Report, within 21 days after receiving it to report all earnings of any nature, including all social security benefits. The Division, employer, or carrier may require the employee to send LES Form DWC-19 no more than once a month.
(3) If the employee willfully fails or refuses to report information requested in accordance with paragraphs (1) or (2) above within 21 days after receipt of the request, payments of workers' compensation disability benefits for temporary total, temporary partial, permanent total or permanent total supplemental compensation shall cease until such time as the employee furnishes the signed form.
(4) The party requesting the employee's authorization for release of social security benefit information shall furnish the DWC-14 form to the employee. The requesting party shall be responsible for submitting the Request for Social Security *652 Disability Benefit Information to the Social Security Administration office nearest to the employee's address. The requesting party must send a copy of the completed LES Form DWC-14 to the Division.
(5) If the carrier changes the employee's compensation rate based on any offset, the carrier shall send to the Division, along with the appropriate income source report, LES Form DWC-4 indicating the change in accordance with the provisions of Rule 38F-3.0091.
(6) If the employee's benefits have been suspended due to the employee's willful failure or refusal to furnish a signed release, the carrier shall send to the Division LES Form DWC-4 indicating the effective date and reason code for suspension of the benefits in accordance with the provisions of Rule 38F-3.0091.
(7) When submitting LES Form DWC-14 to the Social Security Administration, or LES Form DWC-30 to the Division of Unemployment Compensation, the requestor may want to include with the form a self-addressed stamped return envelope or the requestor's return address printed on a peel-off adhesive label in order to expedite processing.
While rule 38F-3.021 prescribes detailed procedures for reporting the receipt of social security benefits, it does not prescribe any procedure or manner for compelling an employee to apply for such benefits, it does not define what constitutes statutorily required "cooperation," and it does not set forth any time periods in which the employee must respond to a request to apply for social security benefits.
The reason for adopting rules to implement these statutory provisions is obvious it is required by the statute itself. Moreover, the need for such rules is equally obviousthe statute does not set forth any procedure or manner for enforcement of these provisions, so the division must establish procedures and create forms or other means for collecting and communicating the subject information to the division as well as the employer. Implementing rules are necessary to give the employee adequate notice of what is required of the employee and how the employee can comply with these statutory requirements, as was done in respect to reporting the receipt of social security benefits. More importantly, questions regarding the application of these statutory provisions to particular classes of cases, such as the occurrence of injuries or awards of benefits before their effective date, can be resolved in the rule-making process rather than on an ad hoc case-by-case basis. Indeed, the majority opinion recognizes these omissions but simply states that section 440.15(1)(f)2.b. must be construed as though it explicitly requires the employer and carrier to give adequate notice to the employee. I reject the notion that this court should, by implication, add substantive requirements to the statute to define the manner and procedure to be followed when the statutory language charges the division with that responsibility through the exercise of its rule-making power.
The inadequacy of the language in section 440.15(1)(f)2.b. to apprise an employee of any procedure or manner for cooperation is well illustrated by the facts of this case. The employer and carrier contend that, "In order to have a third-party assist an individual in making a social security claim, the individual would have to sign a Social Security Administration Form # 1696, which is an appointment of representative form."[6] Yet nothing in section 440.15(1)(f)2.b. suggests that an employee can be compelled to appoint the employer or carrier as the employee's representative to file his claim for benefits with the Social Security Administration, nor does the statute indicate that this procedure is the only way in which the employee can reasonably comply with the new statutory requirement. Moreover, if an employer and carrier request the employee to file for social security benefits, can they suspend payment of benefits if the employee does not do so within 30 days, 21 days, or 5 days? In what manner may the employee satisfy the statutory requirement? The division is authorized and *653 directed by statute to devise the manner, procedures, forms, and timetable for compliance by the employee, but surely that will not entail requiring the employee to appoint an "adversary" to act as the employee's "representative" before the Social Security Administration. Since no rule had been adopted by the division in January 1994 to implement this amendment, the unilateral attempt by the employer and carrier in this case to enforce the statute six days after it became effective in the absence of an implementing rule was premature and invalid. The employer and carrier did not first apply to the judge of compensation claims for an order directing how the new statutory provision could be enforced, but merely treated the new provision as self-implementing despite the statutory directive that the division implement the provision by rule. For these additional reasons, I would affirm the appealed order in all respects.
NOTES
[1] This quoted statement from Southern Bakeries refers to the source of payment as between the claimant and the E/C.
[2] Section 440.15(10)(c), Florida Statutes, allows an E/C to take an offset only when a claimant is actually receiving social security benefits: "No disability compensation benefits payable for any week ... shall be reduced pursuant to this subsection until the Social Security Administration determines the amount otherwise payable to the employee under 42 U.S.C. ss. 402 and 423 and the employee has begun receiving such social security benefit payments."
[3] Section 440.15(1)(f)2.a., Florida Statutes (Supp.1994), was not changed by the 1993 amendment and reads:

2.a. The division shall provide by rule for the periodic reporting to the division of all earnings of any nature and social security income by the injured employee entitled to or claiming additional compensation under subparagraph 1. Neither the division nor the employer or carrier shall make any payment of those additional benefits provided by subparagraph 1. for any period during which the employee willfully fails or refuses to report upon request by the division in the manner prescribed by such rules.
[4] Section 440.15(2)(d), Florida Statutes (Supp. 1994), was added by the 1993 amendment and reads:

(d) The division shall, by rule, provide for the periodic reporting to the division, employer, or carrier of all earned income, including income from Social Security, by the injured employee who is entitled to or claiming benefits for temporary total disability. The employer or carrier is not required to make any payment of benefits for temporary total disability for any period during which the employee willfully fails or refuses to report upon request by the employer or carrier in the manner prescribed by the rules. The rule must require the claimant to personally sign the claim form and attest that he has reviewed, understands, and acknowledges the foregoing.
[5] Section 440.15(10)(c), Florida Statutes (Supp. 1994), was not changed by the 1993 amendment and reads:

(c) No disability compensation benefits payable for any week, including those benefits provided by paragraph (1)(e), shall be reduced pursuant to this subsection until the Social Security Administration determines the amount otherwise payable to the employee under 42 U.S.C. ss. 402 and 423 and the employee has begun receiving such social security benefit payments. The employee shall, upon demand by the division, the employer, or the carrier, authorize the Social Security Administration to release disability information relating to him and authorize the Division of Unemployment Compensation to release unemployment compensation information relating to him, in accordance with rules to be promulgated by the division prescribing the procedure and manner for requesting the authorization and for compliance by the employee. Neither the division nor the employer or carrier shall make any payment of benefits for total disability or those additional benefits provided by paragraph (1)(e) for any period during which the employee willfully fails or refuses to authorize the release of information in the manner and within the time prescribed by such rules. The authority for release of disability information granted by an employee under this paragraph shall be effective for a period not to exceed 12 months, such authority to be renewable as the division may prescribe by rule.
[6] The notion of appointing the carrier as claimant's representative to handle claimant's social security claim may well account for the caustic language in the response by claimant's attorney quoted in the majority opinion.