739 So.2d 637 (1999)
GAB BUSINESS SERVICES, INC., and Bio Lab, Inc.,
v.
Raymond O. DIXON, Appellee.
No. 98-3194.
District Court of Appeal of Florida, First District.
July 15, 1999.
Rehearing Denied September 22, 1999.
*638 Mathew D. Staver of Staver & Associates, Orlando, for Appellants.
D. Paul McCaskill, Orlando, for Appellee.
Randy D. Ellison, West Palm Beach, for Amicus Curiae Academy of Florida Trial Lawyers.
PER CURIAM.
This case involves the social security disability offset authorized in section 440.15(10), Florida Statutes (Supp.1994), and the benefit cap arising under section 440.20(14), Florida Statutes (Supp.1994), as interpreted by the Florida Supreme Court in Escambia County Sheriff's Dep't v. Grice, 692 So.2d 896 (Fla.1997). The question to be resolved is whether the employer/carrier (E/C) may cap claimant's workers' compensation and collateral benefits at 100 percent of his average weekly wage (AWW) and thereby offset the amount of workers' compensation benefits paid, or whether the cap on total benefits is 80 percent of claimant's average current earnings (ACE), as computed under the social security law, which would allow no offset because 80 percent of claimant's ACE is greater than his AWW. The judge of compensation claims (JCC) decided that the cap should be based on claimant's ACE and denied the offset. We reverse, but certify the question to the Florida Supreme Court.
The facts in this case are not in dispute. Claimant, Raymond O. Dixon, retired as a police officer in Illinois and relocated to Florida where he later began working for Bio Lab, Inc., as a sales representative. He was injured in a compensable automobile accident on March 28, 1994, and was accepted as permanently and totally disabled as of June 8, 1995. Dixon's AWW at the time of the accident was $260 per week, and the corresponding compensation rate was $173.33; the monthly rates for both were $1,118 and $745.32, respectively. Besides receiving permanent, total disability (PTD) benefits of $745.32 per month, Dixon was given a minimum payment of $100 per month from a group disability policy provided by Bio Lab, as well as social security disability (SSD) benefits in the amount of $424.58 per month. The total of these three benefits is $1,269.90. Claimant's ACE, as determined by the Social Security Administration, are $2,083, and 80 percent thereof is $1,666.40. The reason that Dixon's ACE are more than his AWW is because he was paid much more while a police officer in Illinois than he was while employed at Bio Lab.[1]
The E/C sought to offset claimant's workers' compensation benefits paid and payable by approximately $151.90 per month, the amount that the three benefits exceed the claimant's $1,118 monthly AWW. Dixon successfully replied that based upon section 440.15(10), the cap should be 80 percent of his ACE, or $1,666.40, which would yield no offset to *639 the E/C because this amount surpasses his monthly AWW of $1,118. The E/C contends on appeal that Grice is controlling and allows offsets for combined benefits in excess of 100 percent of AWW. Dixon argues that section 440.15(10) controls and that Grice did not address this issue.
Grice involved the combination of workers' compensation, SSD, and state disability retirement benefits. In capping benefits at 100 percent of AWW and allowing the E/C to offset or decrease its workers' compensation payment to the extent total benefits exceeded the claimant's AWW, the supreme court broadly declared:
We ... hold that an injured worker, except where expressly given such a right by contract, may not receive benefits from his employer and other collateral sources which, when totalled, exceed 100% of his average weekly wage.
Grice, 692 So.2d at 898. Given this holding, we feel compelled to reverse the JCC's order, which caps the amount of benefits at 80 percent of Dixon's ACE and thereby allows Dixon to receive total benefits overpassing his AWW.
Nevertheless, because Grice did not address this issue, we question whether its holding is applicable to cases such as that on appeal in which the claimant's ACE exceed his AWW. Our concern arises from the clear language of section 440.15(10), which expressly prohibits an E/C from reducing workers' compensation benefits to a greater extent than the Social Security Administration could reduce SSD benefits under 42 U.S.C. section 424a, as well as the historical application of the SSD offset.
Section 440.15(10)(a), Florida Statutes (Supp.1994), provides, in pertinent part, as follows:
Weekly compensation benefits payable under this chapter for disability resulting from injuries to an employee who becomes eligible for benefits under 42 U.S.C. § 423 [social security disability] shall be reduced to an amount whereby the sum of such compensation benefits payable under this chapter and such total benefits otherwise payable for such period to the employee and his dependents, had such employee not been entitled to benefits under this chapter, under 42 U.S.C. §§ 402 [social security retirement] and 423, does not exceed 80 percent of the employee's average weekly wage. However, this provision shall not operate to reduce an injured worker's benefits under this chapter to a greater extent than such benefits would have otherwise been reduced under 42 U.S.C. § 424(a)....
The reduction allowed under 42 U.S.C. section 424a is as follows:
(a) Conditions for reduction; computation
If for any month prior to the month in which an individual attains the age of 65 
(1) such individual is entitled to benefits under section 423 of this title, and
(2) such individual is entitled for such month to 
(A) periodic benefits on account of his or her total or partial disability (whether or not permanent) under a workmen's compensation law or plan of the United States or a State...
* * *
the total of his benefits under section 423 of this title for such month and of any benefits under section 402 of this title for such month based on his wages and self-employment income shall be reduced (but not below zero) by the amount by which the sum of 
(3) such total of benefits under section 423 and 402 of this title for such month, and
(4) such periodic benefits payable (and actually paid) for such month to *640 such individual under such law or plans,
exceeds ...
(5) 80 per centum of his "average current earnings[.]"
We agree with Dixon that the clear language of section 440.15(10), when coupled with 42 U.S.C. section 424a, limits the SSD offset available to E/Cs by either 80 percent of the claimant's AWW or ACE, whichever is greater. See Trilla v. Braman Cadillac, 527 So.2d 873 (Fla. 1st DCA 1988) (E/C's SSD offset could be calculated based on 80 percent of AWW only upon showing that offset was not greater than offset allowed Social Security Administration).
The reason for this limitation on the SSD offset is evident when one considers its history. As explained in Lofty v. Richardson, 440 F.2d 1144, 1148 (6th Cir.1971), when the Social Security Act was passed in 1935, there was no provision in it for disability benefits. When disability benefits were first added in 1956, an offset for workers' compensation was required. Two years later, however, the offset was repealed because it was believed that duplication of benefits was slight. Numerous complaints, largely by employers and employer-based organizations, were made to Congress that employers were duplicating payments, because they were responsible for both workers' compensation and one-half of social security disability benefits. Consequently, Congress reenacted the offset in 1966. Id. In so doing, Congress adopted 42 U.S.C. § 424a, which permitted the Social Security Administration, in the absence of a state workers' compensation SSD offset provision, to take an offset to the extent that combined SSD and workers' compensation benefits exceeded 80 percent of the worker's ACE.
In 1973, Florida amended its workers' compensation law to allow, under section 440.15(10), E/Cs instead of the Social Security Administration to take the SSD offset. American Bankers Ins. Co. v. Little, 393 So.2d 1063, 1064 (Fla.1980). Under this scheme, the state and federal laws effectively guaranteed payment of the maximum disability benefits available under either the social security or workers' compensation law, and they shifted the source of payments from predominantly state-generated payments to predominantly federal-generated payments. Id. at 1065. Despite this shifting of the offset, the Florida and federal statutes contain provisions designed to ensure that the injured employee does not receive less under the two acts than he or she would under either. Id. at 1064.
The question then is whether the section 440.20(14) AWW cap on the amount of benefits a claimant may receive from combined collateral sources, as expressed in Grice, can be applied so as to limit a claimant's total benefits to 100 percent of his or her AWW regardless of the claimant's ACE. It is clear that if the only two benefits involved were workers' compensation and SSD, section 440.15(10) would apply and the E/C would be entitled to an SSD offset based on the greater of 80 percent of ACE or AWW. In a situation involving benefits in addition to compensation and SSD, if application of the 100 percent AWW cap arising under section 440.20(14) appears to reduce total benefits to less than 80 percent of a worker's ACE, such reduction of workers' compensation benefits appears to violate section 440.15(10), as well as 42 U.S.C. section 424a, which could give rise to a potential federal preemption controversy.[2]
We are fully aware of the fact that there is no mention in Grice about the claimant's *641 ACE and, therefore, its precedential effect with regard to this case is much in doubt. Nevertheless, we are constrained to conclude that the broad holding in Grice, without any limiting language, necessitates reversal in this case. Although we reverse, we certify the following question to the Florida Supreme Court as one of great public importance:
WHETHER THE HOLDING IN ESCAMBIA COUNTY SHERIFF'S DEP'T v. GRICE, 692 So.2d 896 (Fla. 1997), CAPPING TOTAL BENEFITS RECEIVED BY A WORKER AT 100 PERCENT OF HIS OR HER AVERAGE WEEKLY WAGE, APPLIES WHEN SOCIAL SECURITY DISABILITY IS ONE OF THE BENEFITS RECEIVED BY THE WORKER, AND 80 PERCENT OF HIS OR HER AVERAGE CURRENT EARNINGS, AS COMPUTED BY THE SOCIAL SECURITY ADMINISTRATION, ARE GREATER THAN HIS OR HER AVERAGE WEEKLY WAGE?
REVERSED and REMANDED for further consistent proceedings.
ERVIN, WEBSTER and LAWRENCE, JJ., CONCUR.
NOTES
[1] Dixon was semi-retired at the time of his accident. He was receiving a pension from the Illinois State Retirement Fund in the amount of $1,150 per month, and the employment at Bio Lab supplemented his retirement income. The E/C did not, however, consider the pension payments in the offset calculation.
[2] See also section 440.21(1), Florida Statutes (Supp.1994), which prohibits "[a]ny agreement by an employee to pay any portion of premium paid by his employer to a carrier or to contribute to a benefit fund or department maintained by the employer for the purpose of providing compensation or medical services and supplies as required by this chapter." We assume that by allowing a cap on benefits which include SSD, the Florida Supreme Court implicitly found in Grice that SSD is not a "benefit fund ... maintained by the employer," although employers advance half of the contributions to the social security fund, and that it is not therefore "an agreement by an employee to pay any portion" of benefits.